COLLIER v. STRUBY.

(*Jackson*. September 20, 1897.)

1. MARRIED WOMAN. *Not liable for negligence, when.*

A married woman is not liable for injury resulting from negligent operation of an elevator in a building mortgaged to secure bonds payable to her separate use, although her husband, as president of the mortgagor company, had, with her knowledge, put the property in control of an agent to collect rents and pay them on her debt. She has no separate or other estate in the property and no power to appoint such agent. (*Post, pp. 241–255.*)

Cases cited: 83 Mo., 244; 58 Mo., 361; 115 Mo., 1; 51 Me., 308; 8 Tenn., 335; 9 L. R. A., 155.

2. HUSBAND AND WIFE. *Action for wife's tort.*

In suit against husband and wife for the wife's tort, there can be no recovery against the husband if no right of recovery is shown against the wife. (*Post, p. 255.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. HON. L. H. ESTES, J.

METCALF & WALKER for Collier and Wife.

PERCY & WATKINS, for Struby.

McALISTER, J. Henry Struby, Jr., recovered a verdict and judgment, in the Circuit Court of Shelby County, against W. A. Collier and his wife, Alice

T. Collier, for the sum of $750, damages for personal injuries.    Collier and wife appealed.

The injuries were sustained by the plaintiff while alighting from an elevator, in the Appeal Building, in the city of Memphis.    The contention made on behalf of plaintiff is that Mrs. Collier, at the time of the accident, was in possession of the Appeal Building by an agent collecting the rents, and that she is liable for the negligence of the employe in charge of the elevator.    Among other defenses, the plea of coverture was interposed in behalf of Mrs. Collier.    The proof shows that on June 7, 1892, W. A. Collier and his wife, Alice T. Collier, sold and conveyed to the Memphis Appeal Co. the property then known as the Appeal Building, situated on the northwest corner of Main and Jefferson Streets, in the city of Memphis, fronting about seventy-five feet on Main Street and running back one hundred and five feet on Jefferson Street.    This property belonged, principally, to Mrs. Alice T. Collier, the more valuable portion thereof having been conveyed to her sole and separate use, and a part thereof as her general estate.    Other parts of said property were owned by said Collier and wife, under conveyances giving them estates by entireties.    The consideration for the property conveyed by Collier and wife to the Memphis Appeal Co. was $250,000, $50,000 of which was payable in cash and $200,000 were to be paid in twenty years, as evidenced by coupon bonds, with semiannual interest coupons, maturing in twenty years.

The $200,000 of bonds were accordingly issued, and secured by a deed of trust from the Memphis Appeal Co. to the Memphis Trust Co., covering the real estate and all personal property and fixtures in the building. The Memphis Appeal Co. failed to make the cash payment of $50,000, and, on October 23, 1893, executed its note therefor to the sole and separate use of Alice T. Collier, payable six months after date; and, for the security of said note, executed a trust deed on the Appeal Building property to Wm. M. Smith and Henry Croft, as trustees. The record further shows that W. A. Collier, husband of Mrs. Alice T. Collier, was president of the Memphis Appeal Co., and on or about October 1, 1893, becoming dissatisfied with the outlook of the business, procured his wife's brother, Mr. J. M. Trezevant, to take charge of the building and collect the rents for her benefit. Mr. Collier states he thinks his wife knew of her brother's possession as her representative. At the time Mr. J. M. Trezevant was in possession of the building as agent for Mrs. Collier, by appointment of W. A. Collier, Mrs. Collier was the owner of the two hundred bonds secured by the deed of trust from the Memphis Appeal Co. to the Memphis Trust Co. Afterwards, to wit, on October 23, 1893, the second deed of trust was executed to secure the note for $50,000, and Mr. W. A. Collier states that on that day, representing the Appeal Co., he "undertook to, and did, turn the building over to C. E. Cline, who

was considered' a fine office man, to look to the build-
ing and collect Mrs Collier's rents." Counsel for
Mrs. Collier objected to this testimony, upon the
ground it was not shown that Mr. Collier had any
authority to put Mr. Cline or any one else in
charge of the building for Mrs. Collier. The Court,
however, overruled the objection, and admitted the
testimony. Mr. Collier states his wife was not
aware of this transaction at the time it occurred,
but thinks she knew of it afterwards, but don't know
when she acquired knowledge of it. He further
states, in his original examination, that Cline paid
her some money on rents. Mr. Collier was recalled,
later in the progress of the trial, and asked to be
permitted to correct statements made on his former
examination. He then stated that Mrs. Collier never
received any money from Cline on account of rents.
That Cline claimed that the expenses of running
the building were more than the income.

He further states he did not appoint Cline by
direction of his wife, nor, at the time, with her
knowledge, but she may have known of it after-
wards, "but don't know." That he left directly
after the appointment for New York, and was not
here when Cline was in there. Mr. Collier further
stated that, when Cline was put in charge of the
building, October 23, 1893, the Appeal Company, as
owner, had anticipated the rents from most of the
tenants. The company collected the notes, and dis-
counted them, or used them as collateral, leaving

possibly enough that was collected monthly to meet the current expenses of the building. His recollection is that Cline paid him six dollars. It was while Cline was in charge of the building, to wit, on November 10, 1893, that the accident to the plaintiff happened.

The principal question presented for our determination, is whether, upon the facts stated, Mrs. Collier, a married woman, is liable for the injuries sustained by the plaintiff in consequence of the negligence of the employe in charge of the elevator. In other words, was there such a relation of master and servant established between Mrs. Collier and the negligent employe as that the principle of *respondeat superior* applies.

The case of *Merrill* v. *City of St. Louis*, reported in 83 Mo., 244 (S. C., 53 Am. Rep., 576), cited by counsel for the defendant in error, is somewhat analogous to the present case. That was an action to recover damages for injuries sustained by the plaintiff, Hannah M. Merrill, in falling through a coal hole in the sidewalk of one of the streets of St. Louis. The legal title to the property abutting on the sidewalk, where the injury occurred, was in James M. Duffer, trustee for the sole and separate use of his wife, Lucinda M. Duffer, both of whom were sued for the injury. It was further alleged that said premises were used by Duffer and wife, and that the hole in the sidewalk was used by them in conveying coal to the cellar under the house.

"The more important question," said the Court, "involved in this appeal, is the action of the Circuit Court in rendering judgment *in personam* against Mrs. Duffer, a married woman. It is placed chiefly on the ground that Mrs. Duffer was the separate owner of the real estate, for the betterment of which the nuisance was maintained; that the neglect to keep the coal hole in repairs was a tort, and a married woman, at common law, is answerable personally in damages for her torts not committed in the presence or under the influence of her husband. This general proposition was not controverted by counsel, but the contention, was that the legal title to the real estate was in the husband, who was managing the property and collecting the rents for her; and that, in fact, she neither created the nuisance nor controlled the property on which it was permitted." The Supreme Court said, viz.: "The husband was the mere depository of the legal title. She was the real party in interest. His was a dry, naked trust, not coupled with any interest. . . . He is, therefore, to be regarded, in this discussion, as any other stranger who might be such trustee, with no greater or less obligations and responsibilities resting upon him." The Court further said that the authorities concur in holding that a married woman is liable to an action for her torts not committed in the presence or under the supposed influence of her husband, citing 2 Bishop on Married Women, 256, 257; Schouler on Husband and Wife, 134; *Dailey* v.

*Houston,* 58 Mo., 361; *Marshall* v. *Oakes,* 51 Me., 308; *Wright* v. *Leonard,* 11 C. B. (U. S.), 259, 266.

The case of *Merrill* v. *St. Louis* is to be distinguished from the case now being adjudged, in several important attributes. It appeared, in that case, that Mrs. Duffer owned the property adjoining the sidewalk as her separate estate, while in this case the Appeal Building was not the property of Mrs. Collier, either as a general or separate estate. The legal title was in Smith and Croft, trustees, to secure the note for $50,000 payable to Mrs. Collier. In the former case, the husband "seems to have attended to renting and collecting rents thereon at times; at other times other persons attended to these matters, but whether under direction of the wife or husband, does not appear." In the present case, there is no proof that W. A. Collier was the agent of his wife, or that he attended to the collection of rents for her benefit. The whole scope of the proof is that W. A. Collier, as president of the Appeal Co., put the building in the possession of J. M. Trezevant and N. E. Cline, respectively, at different times, for the collection of rents for the benefit of Mrs. Collier.

The next case cited by counsel for defendant in error is *Flish* v. *Lindsay,* 115 Mo., 1 (S. C., 37 Am. St. Rep., 374), which was an action against Jane Lindsay and her husband, Andrew J. Lindsay, for damages sustained by plaintiffs, in consequence of the falling of a party wall, alleged to have been

occasioned by the careless, negligent, and unwork-
manlike manner in which the said Jane Lindsay
made repairs in her said building. The evidence
showed that Mrs. Lindsay was the owner in fee of
the property, and that it was not a separate estate.
The Court held that a married woman can have no
agent unless she is possessed of a separate estate,
and that the trial Court committed error in instruct-
ing the jury that "if Farrar & Co., or Charles
Farrar, were the agents of Jane Lindsay for the
purpose of causing the alterations and changes in
question to be made, their act was her act, and she
is responsible for the alterations and changes in her
said building as if she had made the contract for
such alterations and changes in person, without the
intervention of an agent." For this error the cause
was reversed and remanded for a new trial.

The Court, in discussing the liability of a *feme
covert* for a tort, said, viz.: "At common law, the
husband had almost absolute control over his wife's
person; was entitled, as a result of their marriage,
to her society, services, and earnings, to her goods
and chattels; had a right to reduce her choses in
action to possession during her life; could collect the
rents and profits of her real estate, and had entire
control over her property. She was bound to obey
him, was incapable of making contracts except for
necessaries, so that, in law, they were regarded as
one person. As a necessary consequence, he alone
was liable for, and could be sued for, her torts and

frauds committed during coverture in his presence or by his procurement; otherwise they were jointly liable, and must be so sued. The only torts for which the wife could be sued at common law, and judgment rendered against her, and jointly with her husband, were torts unmixed with any element of contract, such as an assault, libel, slander, and the like. And even then she was not liable unless the tort was committed out of the presence of the husband, and without his order or consent; otherwise he alone was liable, under the presumption that she was induced to commit them under his coercion."

In 14 Am. & Eng. Enc. L., 647, under the head of "Post-nuptial Torts," the compiler says, viz.: "For all torts committed by a married woman during coverture, in person, except such as are committed under the coercion of her husband, and such as are intimately connected with her invalid contracts, and such as are committed against her husband, she is liable fully as if unmarried. Thus, she may be sued for assault and battery, for trespass, for conversion, for slander, for fraud, and false and fraudulent representations unconnected with her invalid contracts, for burning property, etc. But, at common law, she could not be held responsible for the act of another as her agent, because she could not contract, and therefore could not appoint an agent," etc.

It is not claimed that the tort for which Mrs. Collier is sought to be held liable in this action, was committed by her in person, but that the rela-

tion of master and servant existed between her and the employe in charge of the elevator, for whose negligence she is bound. In cases where a tort is committed by the married woman in person, her liability is plain; but when the wrongful act is done by some one claiming to represent her as agent, her liability is determined by the extent of her power to constitute the agent.

"If she is liable at all," says the Supreme Court of Rhode Island, "her liability must rest upon the same ground as that of any master or principal for the act of a servant or agent. The foundation of the rule, 'respondeat superior,' is contract, express or implied, by means of which the servant stands in the place of the master, so that his act is regarded as the act of the master. If, therefore, there is not, and cannot be, a contract of hiring, there can be no representation of one by the other, and no ground for the application of the rule. There is no substantial difference between holding a married woman liable directly on a contract, or indirectly for a breach of a duty imposed upon her by contract. Although the plaintiff is not a party to a contract with her, yet, when he asserts a relation, based upon a contract, as the foundation of a consequent breach of duty, his position is essentially the same as one who sets up the same contract in order to recover directly for its breach. If we should say she is liable for the tort because of the relation, we should say there was a contract

which made her liable, for if the driver was her husband's servant, and not her's, of course she is not responsible for him; but if he was her servant, and not the husband's, how could a Court, for example, refuse him judgment if he were to sue for wages upon the contract?" The same thing is true of married women which was held in regard to infants, in *Jennings* v. *Rundall*, 8 Term Rep., 335, that there is no liability for torts dependent upon a contract. Lord Kenyon said: "If it were in the power of a plaintiff to convert that which arises out of a contract into a tort, there would be an end of that protection which the law affords infants." The Court observed that it had been somewhat surprised that neither the diligence of counsel nor its own research had brought to light any cases like the one before the Court; and yet the absence of authority, so likely to have occurred before, is perhaps the best authority for the conclusion that a married woman has never been thought to be liable for a tort based upon a contract relation. *Ferguson* v. *Neilson*, 9 L. R. A., 155.

Mr. Cooley, in his work on Torts, after stating the rule in respect of the joint and several liability of husband and wife for the tortious conduct of the latter, remarks: "But the element of contract is as important here as in the law of infancy. The same reasons which would preclude the indirect redress of the infant's breach of contract, by treating it as a tort, will preclude the like redress in the case of a

contract of a married woman. . . . In the recent changes in the common law affected by statute
in the several States, whereby married women have
been given an independent power to make contracts
and control property, it is not very clear how far
the law of torts has been modified. We should
probably be safe in saying that, so far as they give
validity to a married woman's contract, they put
her on the same footing with other persons, and,
when a failure to perform a duty under a contract
is in itself a tort, it may doubtless be treated as
such in a suit against a married woman. The same
would probably be true (under the statute) of any
breach of duty imposed upon a married woman as
owner of property which she possesses and controls
the same as if sole and unmarried.''

The common law on this subject has not been
changed by statute in Tennessee. In the case now
being decided, the Appeal Building, where the accident
happened, was neither the general nor separate estate
of Mrs. Collier, but a mere security for the company's
indebtedness to her, and, under the authorities, it is
clear she had no power to appoint an agent, and is
not responsible for the negligence of those in charge
of the elevator. It is wholly immaterial that the
note secured by the deed of trust was payable to
the sole and separate use of Mrs. Collier, since, in
our opinion, her power to appoint an agent is determined by the character of her interest in the real

estate, and, unless that interest amounted to a separate estate, she had no power to appoint an agent.

The theory upon which the liability of Mrs. Collier was submitted to the jury, is indicated in the following instructions given in charge to the jury, to wit: "Who was in possession of that building and elevator is the first question to establish. Until this is ascertained from the evidence, you have no right to consider any other question, and this means that until the evidence establishes to your satisfaction that Mrs. Alice T. Collier was in possession, and was running and operating the elevator by her servant, you need consider no other question."

The Court then proceeds, viz.: "If you find from the evidence that her brother, Macon Trezevant, had been put in possession for her sole and separate use and benefit, and that she knew that fact and did not repudiate it, then she was in possession, and could not be deprived of it except by her consent. So that whatever action might have been taken afterwards by her husband and attorney, without her consent, could not change her possession to anyone else. And if you find that her possession was for her sole and separate use and benefit, to secure her in the collection of the rents and profits to be applied to a debt held by her to her sole and separate use, then it became her duty to have such servants in her employ to run and operate the elevator carefully and safely," etc.

This charge was clearly erroneous, for the rea-

son the accident did not happen while Trezevant was in charge of the building, but during the agency of Cline, who was appointed · by W. ·A. Collier, and, so far as this record shows, without the knowledge of Mrs. Collier, or her subsequent ratification.

On this subject the Court was in error in refusing the ninth request submitted by counsel for Mrs. Collier, viz. :

"9. If you shall find that Macon Trezevant was put in possession, but find that thereafter one Cline · was put into possession of the property, without the knowledge or consent or acquiescence of Mrs. Collier, and that this accident occurred during Cline's possession, then Mrs. Collier cannot be considered to have been in possession of the property so as to make her liable for the negligence of Cline or his employes."

Again, the Court erred in refusing to give in charge to the jury the fourth request submitted by counsel for Mrs. Collier, viz.: "The fact that the Memphis Appeal Co., the owner of the property, executed a trust deed thereon to secure Mrs. Collier, in a note payable to her sole and separate use, did not create in her a separate estate in the property covered by the trust deed, and that therefore, having no separate estate in the Appeal Building, she had no power, as a married woman, to appoint an agent to take charge of and manage the property, nor did the Appeal Co. or her husband, acting for the company, have any power to appoint for her an agent, and if you find that Cline was

appointed agent for her by the Appeal Co. or by Mr. Collier, acting for the Appeal Co., then Mrs. Collier is not liable for the negligence of such agents or servants."

The Court was also in error in refusing the eighth request respecting the liability of W. A. Collier, the husband of Mrs. Collier, as follows, to wit: "If you find that the defendant, W. A. Collier, was not the owner of the Appeal Building at the time the injury occurred, and was not such owner at the time Cline was put in possession thereof by the Appeal Company, and find that Cline was put in possession by the Appeal Company, and that defendant, Collier, was not in possession of the property at the time the accident occurred, and had no control thereover, and further find upon the last charge hereinbefore given, that the defendant, Mrs. Collier, is not liable, then plaintiff cannot recover against W. A. Collier. In such case he (defendant Collier) is not a wrongdoer, and cannot be sued as such."

The declaration in this case alleged that Mrs. Collier was in possession of the property at the time of the accident, and that through the negligence of her servants and agents the injury occurred, and does not proceed upon the idea that it was through the negligence of W. A. Collier or his agents. If, therefore, no liability was fixed against Mrs. Collier, there is no ground upon which liability could be adjudged against Mr. Collier.

For the reasons indicated, the judgment is reversed, and the cause remanded.